United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND J. ROWELL, M.D. | No. C 10-02816 CRB |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE AS TO FEDERAL CLAIMS AND DISMISSING CASE** |
| v. | |
| VALLEYCARE HEALTH SYSTEMS, et al., | |
| Defendants. | |

Plaintiff Raymond Rowell, M.D., filed this suit as a result of the suspension of his privileges to serve as a family medical doctor for ValleyCare Health Systems (VCHS). Plaintiff alleges that he was wrongfully accused of illegally distributing Oxycontin, a narcotic pain medication, and suffered suspension of hospital privileges, defamation, and damages. Plaintiff brings federal and state law claims, all of which Defendants move to dismiss for failure to state a claim upon which relief can be granted. Mot. to Dismiss (Dkt. 15); Fed. R. Civ. P. 12(b)(6). The Motion to Dismiss the federal claims is GRANTED with prejudice. The Court declines to exercise jurisdiction over the pendent state law claims and therefore dismisses this case in its entirety. Plaintiff is free to file a new action in state court reasserting his state law claims.

//

//

## I. BACKGROUND

Plaintiff alleges that Defendants Dr. Alper and VCHS did not follow their own procedures or the procedures set forth by the Health Care Quality Improvement Act ("HCQIA"), 42 U.S.C. § 11111 et. seq., for peer review of alleged physician malpractice following their receipt of an unverified accusation that Plaintiff was illegally distributing Oxycontin. See generally Cmpl. (Dkt.1). Instead, Defendants filed a complaint directly with the Medical Board of California without informing Plaintiff. Id. ¶¶ 9-10. Plaintiff further alleges that Defendants improperly deprived him of his medical staff privileges, defamed him by recommending to his patients that they switch doctors and reporting him to the National Practitioner Data Bank, and conspired to impede his ability to practice medicine. Id. ¶¶ 11-20.

Plaintiff attempts to state three federal claims: (1) violation of the HCQIA; (2) violation of due process under 42 U.S.C. § 1983; and (3) violation of federal antitrust law. Id. ¶¶ 7-66. The Court will address each claim in turn.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a cause of action that fails to state a claim upon which relief can be granted. All well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Wyler-Summit P'ship v. Turner Broadcasting Sys., Inc., 135 F.3d 658, 661 (9th Cir. 1998). To survive a Rule 12(b)(6) motion to dismiss, the complaint must state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A claim has facial plausibility when the pleaded factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. In addition, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. Despite the requirement that factual allegations in the complaint be taken as true, a legal conclusion couched as a factual allegation need not be accepted. Id.

If it would be futile to allow a plaintiff to re-plead a claim that fails as a matter of law, the court need not grant leave to amend. See Ventress v. Japan Airlines, 603 F.3d 676, 680 (9th Cir. 2010) (citing Chappel v. Lab Corp. of Am., 232 F.3d 719, 725 (9th Cir. 2000)).

## III.     DISCUSSION

### A.     Health Care Quality Improvement Act (Count II)

Plaintiff alleges that Defendants did not comply with the procedures required under HCQIA and VCHS bylaws for a professional review action, including failure to make "a reasonable effort to obtain the facts of the matter" and provide "adequate notice and hearing procedures." Id. ¶ 30. Plaintiff further alleges that Defendants "acted with malice and failed to provide [Plaintiff] with due process pursuant to [the procedures] outlined in HCQIA and [VCHS's] own Bylaws . . . . Therefore, [Plaintiff] is entitled to damages from the Defendant for their tortuous conduct." Id. ¶ 32. To the extent Plaintiff seeks affirmative relief for a breach of HCQIA procedures, such claim is barred because the HCQIA does not provide a private right of action.

Congress passed HCQIA to address malpractice by physicians by promoting "effective professional review" and providing protections to "physicians who participate in effective professional peer review." 42 U.S.C. § 11101(1), (3), (5). The Act sets forth standards for professional peer review proceedings. Id. at § 11112. Section 11111 of the Act provides immunity to physicians and other "persons participating in professional review activities or providing information to professional review bodies . . . [from] money damages arising out of their participation in such activities." Gordon v Lewistown Hosp., 423 F.3d 184, 201 (3d Cir. 2005). The Act, however, does not create a private right of action against hospitals, physicians, or other entities involved in peer review activities for failure to comply with HCQIA standards. See 42 U.S.C. § 11101 et. seq; Singh v. Blue Cross/Blue Shield of Mass., Inc., 308 F.3d 25, 45, fn.18 (1st Cir. 2002); Wayne v. Genesis Med. Ctr., 140 F.3d 1145, 1148 (8th Cir. 1998); Bok v. Mut. Assurance, Inc., 119 F.3d 927, 928-29 (11th Cir. 1997); Hancock v. Blue Cross-Blue Shield of Kan., Inc., 21 F.3d 373, 374-75 (10th Cir. 1994).

Thus, to the extent Plaintiff is seeking affirmative relief pursuant to the HCQIA, that claim is dismissed with prejudice.

### B.    Civil Rights Violations Under § 1983 (Count III)

Plaintiff "seeks declaratory and injunctive relief and monetary damages for violation of his constitutional rights based on race, deprivation of due process and conflicts of interest." Compl. (Dkt. 1) ¶ 35. Plaintiff alleges that Defendants' failure to comply with the standards set forth in the HCQIA and in VCHS's bylaws deprived him of due process. Id. at ¶ 32. Plaintiff, however, does not, and cannot, plead essential elements of a section 1983 claim. Defendants simply were not state actors or acting under color of state law. See generally id. Accordingly, this claim is dismissed with prejudice.

A party is entitled to relief under 42 U.S.C. § 1983 when a constitutional right has been violated by the state or a party acting under color of state law. See, e.g., Polk Cnty. v. Dodson, 454 U.S. 312, 318 (1981); Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191 (1988). Private conduct is presumed not to be state action. Sutton v. Providence St. Joseph Med. Ctr., 192 F.3d 826, 835 (9th Cir. 1999). There are, among other standards, two tests for determining the existence of state action when a defendant is a private party: (1) the "governmental nexus" test; and (2) the "governmental compulsion or coercion" test. Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003).

For a private party to be found to be a state actor under the "governmental nexus test" there must be extensive and detailed state regulation of that party. Moreover, the state must be "so far insinuated into a position of interdependence with [the private party] that it was a joint participant in the enterprise." Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1947). In Jackson, the Court found that "a heavily regulated utility with at least something of a governmentally protected monopoly" did not have a sufficiently close nexus with the state to consider the utility's actions to be under color of state law. Id. at 351, 354.

Under the "governmental compulsion or coercion" test, the power of the state may convert a private action into a state action where the action was compelled by the government. Sutton, 192 F.3d at 836-37. The doctrine was developed to prevent

4

government actors from avoiding liability where state law compelled private entities to undertake unconstitutional conduct. Id. The Supreme Court has found no governmental compulsion where a private hospital treating Medicaid patients was subjected to extensive regulation, received substantial state funding, and was required by law to periodically undertake assessment of patients and discharge them if medically appropriate. Blum v. Yaretsky, 457 U.S. 991, 1005-10 (1982). Because the determinations leading to discharge were based on "medical judgments made by private parties according to professional standards that are not established by the State," the state did not compel the decisions even though it required that the assessments take place. Id. at 1006-07.

Here, Plaintiff admits that Defendants are not state actors. Compl. (Dkt. 1) ¶¶ 3, 5. In his Opposition to the Motion to Dismiss, however, Plaintiff asserts that the "governmental compulsion" and "nexus" tests are satisfied because the "sham review process," and Defendants' delay in reinstating Plaintiff's hospital privileges, triggered statutory reporting requirements to the California Medical Board and the National Practitioner Data Bank. Opp'n. to Mot. to Dismiss (Dkt. 27) at 9 (citing Cal. Bus. & Prof. Code § 805(e) (2010)). Plaintiff's argument appears to be that because Defendants chose to suspend Plaintiff's privileges for an amount of time that triggered the statutory reporting requirements, the state should be considered to have compelled Defendants' action or to be so closely entwined with it that the action is attributable to the state.

But the nature of the review process at issue cannot support a conclusion that Defendants were state actors. Although Plaintiff plausibly alleges that there are state regulations requiring hospitals to report physicians whose privileges have been suspended, this level of state involvement is far less extensive than that at issue in Jackson, and even the involvement in Jackson was not enough to show state action. 419 U.S. at 351, 354. Further, as in Blum, there is no governmental compulsion here. The regulations require reporting but rely on underlying professional standards and assessment not determined exclusively by the state. Blum, 457 U.S. at 1005-06; see Compl. (Dkt. 1) ¶ 15. The fact that Defendants' may

have used or abused state law reporting requirements does not convert their actions into action "fairly attributable to the government." See Sutton, 192 F.3d at 835.

Plaintiff therefore does not (and cannot) allege facts plausibly suggesting that the Defendants acted under color of state law. Accordingly, the section 1983 claim is dismissed with prejudice.

### C.     Sherman Antitrust Act Claim (Count X)

Plaintiff alleges that "[b]y preventing [Plaintiff] from competing in the family medicine market, VCHS has engaged in an unreasonable restraint of trade in violation of section 1 of the Sherman Anti-Trust." Compl. (Dkt. 1) ¶ 62. Because Plaintiff has not (and cannot) state a claim under the Sherman Anti-Trust Act, this claim is dismissed with prejudice.

Contracts and conspiracies in restraint of interstate trade or commerce are illegal under section 1 of the Act. 15 U.S.C. § 1. Section 1 only addresses restraints of trade caused by concerted actions between two or more entities; it does not address action by a single party unless "parties to the agreement act on interests separate from those of the firm itself." Am. Needle v. Nat'l Football League, 130 S. Ct. 2201, 2208-09, 2215 (2010). To bring a claim under section 1, a party must establish "not merely injury to himself as a competitor, but rather injury to competition." Austin v. McNamara, 979 F.2d 728, 739 (9th Cir. 1992). There must be "harm to the economy beyond the claimants' own injury." Oltz v. St. Peter's Cmty. Hosp., 861 F.2d 1440, 1448 (9th Cir. 1988).

#### 1.     Plaintiff Has Not Pleaded (and Cannot Plead) Market Harm

Plaintiff's failure and inability to plead cognizable market harm means that his anti-trust claim must be dismissed with prejudice. See Oltz, 861 F.2d at 1448. Plaintiff simply cannot turn what amounts to an employment grievance by a single doctor into a federal antitrust claim by alleging that he was excluded from the market.

#### 2.     Plaintiff Has Not Pleaded (and Cannot Plead) that Defendants are Separate Entities

Plaintiff's inability to allege that Defendants are separate entities under the Sherman Act further supports dismissal. The critical question in matters involving hospitals and

medical staff is whether the medical staff is "empowered to act for" the hospital; if so, they share a unity of interest and are not subject to a section 1 claim. Oltz, 861 F.2d at 1450. Plaintiffs allegations show that the medical staff here were empowered to act for VCHS.

Plaintiff alleges that "VCHS, its agents and employees, and Michael Alper, M.D. attempted to shut [Plaintiff] out of the relevant healthcare market." Compl. (Dkt. 1) ¶ 66. The Complaint consistently discusses Dr. Alper in his role as Chief of Staff (or acting Chief of Staff) of VCHS and specifically as an agent or employee acting within the scope of employment and on behalf of VCHS. See, e.g., id. ¶ 8 ("These efforts were at all times herein made by Defendants and other individuals acting as agents and employees of VCHS."); ¶ 19 ("VCHS's agents and employees, lead by Michael Alper, M.D. . . ."); ¶¶ 53, 58 (acting as an agent or employee "within the purpose and scope of such agency and employment"). But if Alper acted on behalf of VCHS, then Defendants shared a unity of interest and were not separate entities under the Act. See Oltz, 861 F.2d at 1450. Therefore, Plaintiff cannot plead that two legally distinct entities acted together to force him from the market.

**D.   State Law Claims (Counts IV-IX)**

Defendants move to dismiss all state law claims.[1] Because the Court has dismissed all federal claims with prejudice, it declines to exercise supplemental jurisdiction over the pendent state law claims. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). Accordingly, the Court dismisses all state law claims without prejudice.

//
//
//
//
//
//

---

[1] Plaintiff alleges six state law claims: (1) defamation, (2) breach of contract, (3) tortious interference of a prospective economic advantage, (4) civil conspiracy, (5) negligent infliction of emotional distress, and (6) intentional infliction of emotional distress.

7

## IV.  CONCLUSION

The Motion to Dismiss GRANTED as to the federal claims with prejudice.  The Court declines to exercise supplemental jurisdiction over the state law claims.  Plaintiff is free to re-file his state law claims in state court.

**IT IS SO ORDERED.**



Dated: October 21, 2010

CHARLES  R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2010\2816\Order granting MTD with prejudice and dismissing case.wpd 8